# In the United States Court of Federal Claims

No. 18-891C

(Filed: January 7, 2019)

```
*****************************
                              *
DUKE ENERGY PROGRESS, INC. and *
DUKE ENERGY FLORIDA, INC.,    *
                              *
              Plaintiffs,     *   Spent Nuclear Fuel; Nuclear Waste
                              *   Policy Act of 1982; CFC Rule 12; Motion
v.                            *   to Dismiss; Breach of Contract;
                              *   Collateral Estoppel; Foreseeability of
THE UNITED STATES,            *   Damages.
                              *
              Defendant.      *
                              *
*****************************
```

*Brad Fagg*, with whom were *Paul M. Bessette* and *Jane T. Accomando*, Morgan, Lewis & Bockius LLP, Washington, D.C., for Plaintiffs.

*Jimmy S. McBirney*, Trial Attorney, with whom were *Joseph P. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Lisa L. Donahue*, Assistant Director, *Christopher L. Harlow*, *Kristen B. McGrory*, and *Melissa L. Baker*, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., and *Jane K. Taylor*, U.S. Department of Energy, Office of the General Counsel, Washington, D.C., for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

  Plaintiffs Duke Energy Progress, LLC and Duke Energy Florida, LLC (collectively, "Duke") seek damages for activities taken to mitigate the impact of the Department of Energy's breach of contract relating to the acceptance and removal of spent nuclear fuel ("SNF").[1] Duke Energy Florida, LLC owns the Crystal River Unit 3 nuclear plant. Crystal River generated SNF as a byproduct of the reactor's operation until October 2009 when

---

[1] This is the fourth round of Duke cases before this Court arising out of DOE's breach of the same contract.

Duke shut the facility down for a scheduled maintenance and refueling outage. Duke prolonged the shutdown beyond this scheduled period after discovering a delamination, or concrete separation, at the facility. In February 2013, Duke retired the Crystal River facility. Duke alleges in its complaint that it incurred shutdown-related expenses that it would have avoided had the Government not breached the contract.

Currently before the Court is Defendant's partial motion to dismiss Plaintiffs' complaint. The Government asserts that the doctrine of collateral estoppel precludes Duke from re-litigating certain issues of fact and law conclusively determined during an earlier case relating to this contract. Defendant argues that Plaintiffs' claim is incompatible with these already-established issues so that they cannot assert a claim for relief. For the reasons explained below, the Court DENIES Defendant's partial motion to dismiss because Plaintiffs' complaint does not present issues of law and fact identical to those litigated in the prior related proceeding.

Background

A. The Nuclear Waste Policy Act and Breach of the Standard Contract

Congress enacted the Nuclear Waste Policy Act of 1982, as amended, 42 U.S.C. §§ 10101 *et seq*. to address nuclear power plants' disposal of SNF. Generally, the Act specifies that SNF generators and owners are responsible for interim SNF storage costs until DOE accepts the material. See § 10131(a)(5). Pursuant to the Act, DOE executed a Standard Contract for Disposal of Spent Nuclear Fuel ("Standard Contract") with four of Duke's plants, including the Crystal River facility.

Under the Act and the Standard Contract, Duke agreed to pay into the Nuclear Waste Fund in exchange for DOE's performance of spent fuel disposal services. DOE was required to begin accepting SNF no later than January 31, 1998 and continue acceptance and disposal until no further SNF remained at Duke's facilities. To date, DOE has neither accepted nor disposed of SNF from any of Duke's sites. Duke has sought damages for activities taken to mitigate the impacts of DOE's breach of contract in successive rounds.[2]

B. The Delamination Event at Crystal River

During the third round of these related cases, Duke attempted to recover costs incurred at Crystal River. Duke began a scheduled outage at Crystal River in 2009 to begin a renovation designed to increase the plant's power production capacity. Duke decided to self-manage the project, although this kind of undertaking typically is overseen by a professional consulting firm. During construction, Duke encountered a delamination in

---

[2] See Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1378 (Fed. Cir. 2005) (holding that utilities are required to file successive actions for damages related to DOE's breach of the Standard Contract within six years of incurring such damages).

Crystal River's containment building. At this same time, Duke was building an Independent Spent Fuel Storage Installation ("ISFSI") pad at Crystal River. Duke decided to suspend work on the ISFSI project following the delamination at Crystal River. Since the ISFSI was not completed, Duke stored its waste and fuel elsewhere at additional expense.

In the prior round, this Court considered the above facts and their impact on Duke's ability to recover certain costs, and determined that:

> Duke's decision to self-manage the steam generator replacement project and the eventual delamination were not foreseeable results of [DOE's] breach. Based on prior, similar projects, if Duke had retained a professional firm to assist in the engineering aspects of the project, it is likely that delamination problems would not have happened. Edwards, Tr. 199-201. . . . If the delamination had not occurred, work on the Crystal River storage installation would not have been interrupted, negating the continued need for dry storage. Edwards, Tr. 206, 209. Suspending the dry storage project resulted in the storage and contract termination costs that Duke claims. As this suspension was a result of the delamination and DOE had no involvement in the events leading to the delamination, these expenses are solely attributable to Duke.

Duke Energy Progress, Inc. et al v. United States, 135 Fed. Cl. 279, 289 (2017). Duke's unforeseeable mismanagement of the project therefore broke the causal chain between DOE's breach and Duke's dry storage and contract termination expenses sought in round three. Accordingly, this Court denied Duke recovery for these costs.

### C. The Present Dispute

Duke permanently retired Crystal River in February 2013. However, the last of the SNF was not removed from the Crystal River pool storage facility to the ISFSI until January 2018. As a result, Duke incurred post-shutdown costs for operations, maintenance, and security associated with the spent fuel pool in which the SNF was stored for this approximately five-year period (dubbed "wet-pool costs"). Duke argues that had DOE accepted the SNF when Duke shut down Crystal River in early 2013 as DOE was contractually required to do, Duke would not have incurred these costs. In its complaint, Duke seeks to recover these wet-pool costs for the period January 1, 2014 through a date yet to be determined.

The Government challenges these costs in its partial motion to dismiss, asserting that the doctrine of collateral estoppel limits its liability. In round three, this Court made findings on foreseeability, culpability, and causation relating to Duke's dry storage and contract termination costs flowing from the Crystal River delamination. The Government claims that the same legal and factual issues from that earlier proceeding underlie Duke's

current claim for wet-pool costs and bars the Court from hearing this claim as a matter of law.

## Procedural History

Plaintiffs' complaint begins the fourth round of cases arising from DOE's breach of the same contract. Round one of this series of cases involved Plaintiffs' claims for damages incurred through 2005. See Carolina Power & Light Co. v. United States, 82 Fed. Cl. 23 (2008); Carolina Power & Light Co. v. United States, 573 F.3d 1271 (Fed. Cir. 2009) (addressing the government's appeal); Carolina Power & Light Co. v. United States, 98 Fed. Cl. 785 (2011) ("Duke I"). Round two dealt with Plaintiffs' claims for damages incurred through 2010. Carolina Power & Light Co. v. United States, 115 Fed. Cl. 57 (2014) ("Duke II"). In the previous round, round three, Plaintiffs sought damages for costs incurred through 2013. Duke Energy Progress, Inc. et al v. United States, 135 Fed. Cl. 279 (2017) ("Duke III").

Plaintiffs filed their complaint in this Court on June 22, 2018. Defendant then moved to dismiss parts of Plaintiffs' complaint on September 21, 2018. Plaintiffs filed their response on October 19, 2018, and Defendant filed its reply on November 11, 2018. The Court heard oral argument on December 13, 2018.

## Discussion

### A. Standard of Review

When considering a motion to dismiss a complaint for failure to state a claim upon which relief may be granted under Rule 12(b)(6), the Court must accept as true all factual allegations submitted by the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accepting those allegations as true, for the plaintiff to survive dismissal, the Court must conclude that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The plaintiff's factual allegations must be substantial enough to raise the right to relief above the speculative level, accepting all factual allegations in the complaint as true and indulging all reasonable inferences in favor of the non-movant. Twombly, 550 U.S. at 545; Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 938 (Fed. Cir. 2008).

### B. The Issues in Round Three Are Not Identical to Duke's Current Claim.

Collateral estoppel prevents a court from re-litigating issues of fact or law conclusively determined in a prior proceeding. To succeed on a collateral estoppel defense, the movant must prove that four conditions are met: (1) the issue is identical to the one decided in the first action; (2) the issue was actually litigated in the first action; (3)

4

resolution of the issue was essential to the final judgment in the first action; and (4) the plaintiff had a full and fair opportunity to litigate the issue in the first action.  See Shell Petrol., Inc. v. United States, 319 F.3d 1334, 1338 (Fed. Cir. 2003); see also Restatement (Second) of Judgments § 27 (When each of the four conditions is met, "the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").  Collateral estoppel therefore cannot apply if any of the four conditions are not met.  In the context of a motion to dismiss, the movant must prove each of the above factors with all reasonable inferences drawn in the plaintiff's favor.  Twombly, 550 U.S. at 545.

The Government's sole legal argument is that Duke is precluded from re-litigating certain findings established in Duke III, thus causing Duke's complaint to fail to state a claim for relief.  The central question for purposes of DOE's motion is whether Duke's complaint presents issues of law and fact identical to those litigated in round three.

In Duke III, this Court found: (1) Duke's mismanagement of the Crystal River project was an unforeseeable consequence of DOE's breach of contract; (2) Duke was solely responsible for (and DOE had no part in) the project and resulting delamination; (3) the delamination event caused Duke to delay construction on the ISFSI; (4) suspending the ISFSI project led to additional dry storage and contract termination costs; and (5) Duke could not recover these additional costs because they did not stem from DOE's breach.

The Government extrapolates the above findings to Duke's current claim and argues the following.  If not for the delamination and resulting ISFSI project interruption, Duke would have completed the ISFSI by the time it chose to retire Crystal River.  With a fully constructed ISFSI, Duke could have emptied its wet-pools on the earliest possible move out date, thereby eliminating the approximately five years of additional wet-pool costs now sought.  The wet-pool costs—because they flow directly from the delamination just like the dry storage and contract termination costs in Duke III—are Duke's fault alone and unrecoverable as a result.  This series of hypotheticals invites DOE's collateral estoppel defense.  Duke's current claim relies on facts and law incompatible with those essential to finding Duke responsible for the additional costs pursued in Duke III and therefore must fail.  The Court disagrees.

The Government's application of Duke III's findings on foreseeability, culpability, and causation for separate expenses to Duke's present claim is overstated.  When drawing all reasonable inferences in Duke's favor, Duke's current claim raises new issues of fact and law.

In Duke III, Duke sought to recover dry storage system and contract termination costs above and beyond what was contemplated under the contract.  Now, Duke looks to recover entirely separate wet-pool costs associated with Crystal River's shutdown.  The Government appears to group all costs associated with the Crystal River facility under a single, universal umbrella from which it claims immunity.  But the dry storage and contract

5

termination costs from round three and the wet-pool costs at issue here are not simply interchangeable. They are two different sets of costs which involve different evidence and a different factual record.

Moreover, while the delamination event may be implicated in both the present and previous claim, additional facts, and the legal implications of those facts, must be considered before the Court can determine whether Duke can recover its wet-pool costs. Plaintiffs assert that "the delamination was the triggering factor" for Crystal River's retirement, but, outside of this statement, the Court has neither been presented with nor considered any other of the potentially many reasons why Duke decided to retire Crystal River. Pl.'s Resp. at 15. Relatedly, Duke's current claim raises the new legal question of whether or to what degree the cause of a nuclear plant's shutdown impacts a plaintiff's ability to recover damages after a plant is retired.

In Duke III, this Court also did not consider whether Crystal River's retirement and any shutdown related costs, as an entirely distinct type of loss, were foreseeable. As Duke points out, further factual and legal issues cascade from this unanswered question. For example, the Standard Contract executed between DOE and Duke appears to contain a provision requiring DOE to remove SNF after a plant's premature shutdown "for whatever reason." Pl.'s Resp. at 9. The meaning of that provision, along with any legal implications that language might have for Duke's ability to recover, has never been addressed. In short, the present dispute does not raise issues of law and fact identical to those in Duke III.

The Government, as movant, carries the burden of establishing each element of its collateral estoppel defense. Since DOE has failed to establish that the current issues and those in Duke III are identical, the Court can end its analysis here. Merely because the delamination event severed the connection between DOE's breach and Duke's discrete dry storage and contract termination costs does not now mean that DOE is forever insulated from a claim for costs at Crystal River. Collateral estoppel does not apply here, and the Government's motion to dismiss must fail as a result.

## Conclusion

For the reasons stated above, the Court DENIES Defendant's partial motion to dismiss Plaintiffs' complaint for failure to state a claim. No costs.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge